UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRY HAGER, | No. 19-cv-12835 (NLH) (JS) |
| Plaintiff, | |
| v. | OPINION |
| S. YOUNG, et al., | |
| Defendants. | |

APPEARANCE:
Terry Hager, No. 06399-045
FCI Butner
PO Box 1000
Butner, NC 27509
    Plaintiff Pro se

HILLMAN, District Judge

Plaintiff Terry Hager, presently incarcerated in the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"), seeks to bring a claim pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), against S. Young, the former Administrator of the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), and J. Jamison, Young's successor.  See ECF No. 1.  He has also filed a motion for a temporary restraining order.  See ECF No. 14.

At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

1

seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will dismiss the Amended Complaint without prejudice for failure to state a claim, with leave to amend. 28 U.S.C. § 1915(e)(2)(b)(ii). The motion for a temporary restraining order is denied.

I.  BACKGROUND

Plaintiff's Amended Complaint alleges officials at FCI Fairton harassed and failed to protect him from harassment during his incarceration at that facility. He alleges that on December 27, 2018, he requested to be placed in segregation for his own protection "due to the aggressive treatment that he was receiving from other inmates." ECF No. 13, Amended Compl. at 6. Lt. Smith of the Special Investigative Services Department interviewed Plaintiff and informed him that the inmates who had been bothering him were members of a "Texas Aryan group." Id. at 6-7. A "keep separate" order was placed on Plaintiff and the other inmates. Id. at 7.

On January 2, 2019, Plaintiff was in the shower when another inmate entered and began "accusing him of 'having placed a separate upon him.'" Id. The other inmate indicated he was part of the same Aryan group as the inmates from whom Plaintiff was supposed to be kept separate. Id. Plaintiff alleges that information regarding "keep separate" orders is only supposed to be handled by case management or corrections staff.

On January 7, 2019, Plaintiff began hearing "derogatory and insensitive remarks, along with vulgar language" being broadcast from his personal radio. Id. at 8. The statements were being broadcast "over the public airwaves of the various different radio stations in which the claimant was tuning into too." Id. Plaintiff alleges the remarks were directed towards a specific person and were derogatory towards "that person's sexual orientation such as, 'F****T,' 'F*****G H**O,' 'RAT B***H,' and other[s] . . . ." Id. Plaintiff states he then heard these epithets after his own name on numerous occasions, making him realize the voices on the radio were talking about him. Id. "There was a direct reference made once that stated, 'LOOK AT THAT F****T LAYING IN THE BED SHAKING HIS FOOT.' This was the exact actions that were occurring at that precise moment by the claimant." Id. Plaintiff alleges this commentary on his actions was being made by "various different radio commentators, and from also every radio station in which the claimant would tune into." Id. at 8-9.

Plaintiff asserts that FCI Fairton was using a

> capability that allows it to broadcast over both the AM and FM radio frequency airwaves, in seemingly real-time, and use the vocal voice of any radio commentator, personality, and at times even musicians, and make any type of remark or statement that the initiator of this clear computer-based orientated feature so chosse's [sic] to threaten and harass the claimant.

Id. at 9. He states the technology was being used "in conjunction with another intuitive/sentient type of capability that allows the user to perceive both the exact actions and intents of the person which the ability is directed at, and excessively monitor the person." Id.

Plaintiff filed a grievance about the broadcasts on January 9, 2019. Id. The matter was referred to the Special Investigations Services Department. Id. at 10. He filed another internal remedy with S. Young, the Administrator of FCI Fairton, altering him to the abuse of the "radio broadcasting manipulation ability, and the intentional disclosure of confidential information." Id. When he received no assistance from Administrator Young, he appealed to the Bureau of Prisons' Central Office. Id. "It was around this time that the claimant began being threatened VIA THE RADIO, when he was told, 'YOU NEED TO STOP FILLING OUT THOSE RAT SHEETS ON US!'" Id. He continued to receive threats via the radio that his personal property and legal materials would be destroyed and that it would continue even if he moved facilities. Id. "The claimant was even threatened with the insinuation of another system when he was told, 'JUST LIKE WE CAN PLAY WITH YOUR RADIO, WE CAN DO THE SAME WITH YOUR PHONE CALLS TOO.'" Id.

In March 2019, Administrator Young retired and J. Jamison took over the position. Id. at 11. Plaintiff met with the

Special Investigations Services Department on March 6, 2019 to discuss a possible transfer for unrelated reasons. Id. Plaintiff inquired as to the status of his grievances about the radio broadcasts. Id. According to Plaintiff, Lt. Weiler said "'THAT'S JUST CRAZY.'" Id. Plaintiff met with Lt. Robinson on March 14, 2019. Id. Plaintiff states that after giving his statement about the "abuse of the system(s)," he was told that he would not be informed of the result of any investigation because it was a potential staff investigation. Id. at 11-12.

Plaintiff began limiting his radio time "in order to avoid being reminded that he was being monitored." Id. at 12. However, Plaintiff alleges that "another system fore-which the claimant could not avoid, a conveyance/telepathic type of system, began being utilized to harass the claimant as well, this feature was even used to disturb the claimant's sleep." Id. Plaintiff submitted grievances regarding the use of the systems to Administrator Jamison. Id. In May 2018, the radio began telling Plaintiff that "'WE KNOW WHAT YOU ARE UP TOO [sic], AND WE WILL JUST PURGE AND REBOOT OUR SYSTEMS ONCE YOU ARE GONE!'" Id.

Plaintiff also alleges prison officials denied him access to the use of the law library and the courts. He states that he received notification from the United States Court of Appeals for the Eighth Circuit on April 12, 2019 that his appeal had

5

been denied. Id. He called his attorney on April 17, 2019 who told him that he would have to appeal pro se. Id. at 12-13. Plaintiff alleges that he made his case manager aware of the deadline to appeal, but he was prevented from using the law library in a timely fashion because the computer was missing its mouse. Id. at 14. He claims Administrator Jamison failed to replace the mouse and order that Plaintiff be taken to the law library in time to file his appeal. Id.

Plaintiff is now confined in FCI Butner, North Carolina. In addition to the alleged constitutional violations, Plaintiff requests a TRO prohibiting defendants from using the "systems" to harass him. See ECF No. 14.

## II. STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding in forma pauperis. The Court must sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding in forma pauperis and is incarcerated.

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to

show that the claim is facially plausible. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. DISCUSSION

A. Claims Against Administrator Young

Plaintiff raises several claims against former FCI Fairton Administrator Young arising out Administrator Young's failure to take action after Plaintiff alerted him to an alleged pattern of harassment taking place over the prison's radio waves and "conveyance/telepathic" systems. "A claim is frivolous if it lacks an arguable basis in fact or in law. If a claim is fanciful or describes 'fantastic or delusional scenarios,' then it is factually baseless." Perkins v. New Jersey Dep't of Labor, Div. of Workers Comp., 154 F.R.D. 132, 133–34 (E.D. Pa. 1994) (quoting Rice v. Martelli, No. 94-984, 1994 WL 57218, at *1 (E.D. Pa. Feb. 22, 1994)). The allegations that Plaintiff is

7

being harassed by radio broadcasts capable of "us[ing] the vocal voice of any radio commentator, personality, and at times even musicians" and by telepathic voices are "fantastic or delusional scenarios." These claims are dismissed with prejudice as no further amendment can cure Plaintiff's pleading deficiencies.

B. Claims Against J. Jamison

To the extent Plaintiff alleges Administrator Jamison also ignored the harassment via the prison's "systems," the claims are dismissed with prejudice. The remainder of the claims against Administrator Jamison are dismissed without prejudice.

Plaintiff has failed to a state claim that Administrator Jamison failed to protect him. To state an Eighth Amendment claim for failure to protect, a plaintiff must sufficiently allege that prison officials were deliberately indifferent to his health or safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. There are not enough facts in the Amended Complaint to plausibly infer that Administrator Jamison knew of and disregarded an excessive risk to Plaintiff's health or safety.

Plaintiff has also failed to state a claim that Administrator Jamison interfered with his access to the courts. "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show . . . that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim . . . ." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). The complaint "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' . . . ." Id. at 205-06 (quoting Christopher v. Harbury, 536 U.S. 403, 416 (2002)). Plaintiff has not sufficiently described the claims he asserts were lost. Nor has he shown that he requested an out of time appeal and was denied. See Monroe, 536 F.3d at 206 (holding that there must be no alternative remedy before filing an access to the courts complaint). These claims are dismissed without prejudice for failure to state a claim.

Generally, "plaintiffs who file complaints subject to dismissal under [§ 1915] should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). The Court will grant leave to amend in order to allow Plaintiff an opportunity to cure his pleading deficiencies for his claims against defendant Administrator Jamison as described supra.

C. Retaliation

To the extent the complaint could be construed as raising retaliation claims against prison employees, the Court dismisses the claims for failure to state a claim. The Third Circuit has thus far interpreted Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), to preclude First Amendment retaliation claims against federal employees. See Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel, 723 F. App'x 137, 140 n.3 (3d Cir. 2018)(citing Vanderklok v. United States, 868 F.3d 189, 199 (3d Cir. 2017)). These claims shall therefore not be permitted to proceed at this time.

D. Motion for Temporary Restraining Order

Plaintiff moves for a temporary restraining order under Federal Rule of Civil Procedure 56. ECF No. 14. He argues that FCI Fairton is abusing their facility computers to harass him and disclose personal and sensitive information.

To secure the extraordinary relief of a preliminary injunction, Plaintiff must demonstrate "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." KOS Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). All four elements must be satisfied. Roberts v. Ferman, 448 F. App'x 254, 256 (3d Cir. 2011).

The Court denies Plaintiff's motion for a temporary restraining order because he has not shown a likelihood of success on the merits.  Moreover, he has been transferred from FCI Fairton to FCI Butner, making his injunctive relief claims moot.

CONCLUSION

For the reasons stated above, the Complaint is dismissed without prejudice for failure to state a claim, with leave to amend granted.  An appropriate order follows.


Dated: __September 4, 2019_____    ___s/ Noel L. Hillman_____
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.